## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

JOHN DOE,

     Plaintiff,

v.

UNITED STATES OF AMERICA;
FEDERAL BUREAU OF PRISONS;
ERIC RARDIN; DOMINIQUE LICATA
ROMERO; ALAN GREGORY;
KRISTINE AULEPP; JEFFREY
WILLIAMS; THOMAS MCCLAIN;
BENJAMIN KEATHLEY;
JOHN ROE OFFICERS 1-7.

     Defendants.

Case No.

Hon.

---

MARC J. MENDELSON (P52798)
MADELINE M. SINKOVICH (P82846)
MIKE MORSE LAW FIRM
24901 Northwestern Highway, Suite 700
Southfield, MI 48075
(248) 350-9050
madeline.sinkovich@855mikewins.com
Rima.najor@855mikewins.com
Attorneys for Plaintiff

---

## **COMPLAINT AND JURY DEMAND**

     NOW COMES Plaintiff, JOHN DOE, by and through his attorneys, MIKE

MORSE LAW FIRM, and for his Complaint against Defendants, states as follows:

## **INTRODUCTION**

1.     This is a civil rights action seeking monetary damages for the catastrophic injuries Plaintiff John Doe sustained as a result of Defendants' deliberate indifference to his safety and medical needs while incarcerated in federal custody. On August 9, 2023, Mr. Doe was brutally assaulted by a prison gang at Federal Correctional Institution Milan (FCI Milan), suffering life-threatening traumatic brain injury, spinal injuries requiring surgery, and severe psychological trauma that continue to this day.

2.     This assault was entirely preventable. Defendants knew or should have known that Mr. Doe faced substantial risk of serious harm as a federal cooperating witness who had testified against violent cartel members, yet they deliberately failed to protect him by housing him in the same facility as an individual against whom Mr. Doe had testified. This individual is referred to herein as "Richard Roe," a pseudonym used for safety purposes, as Defendants have Richard Roe in custody and are aware of his identity. Defendants are also aware of Plaintiff's identity.

3.     Following the assault, Defendants at both FCI Milan and the U.S. Medical Center for Federal Prisoners in Springfield, Missouri exhibited deliberate indifference to Mr. Doe's serious medical needs by providing inadequate treatment, ignoring his medical complaints, and failing to provide reasonable accommodations for his disabilities in violation of the Americans with Disabilities Act.

2

## **JURISDICTION AND VENUE**

4.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), 28 U.S.C. § 1346(b) (Federal Tort Claims Act), and *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

5.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because the events giving rise to this action occurred within this judicial district at FCI Milan in Milan, Michigan.

## **PARTIES**

6.     Plaintiff John Doe is a 48-year-old man who was incarcerated in federal custody at the time of the incidents described herein. Mr. Doe was granted compassionate release and is no longer incarcerated.

7.     Defendant Federal Bureau of Prisons is a federal agency within the United States Department of Justice responsible for the operation of federal correctional institutions and the custody, care, and security of federal inmates.

8.     Defendant United States of America is sued pursuant to the Federal Tort Claims Act for the negligent and wrongful acts of its employees acting within the scope of their employment. Plaintiff timely filed a claim under the Federal Torts Claims Act and Defendant failed to respond in the required timeframe.

9.      Defendant Eric Rardin was at all relevant times the Warden of FCI Milan, acting under the color of federal law.

10.     Defendant Dominique Romero Licata was at all relevant times a Case Manager at FCI Milan, acting under color of federal law.

11.     Defendant Alan Gregory was at all relevant times a Correctional Officer at FCI Milan, acting under color of federal law.

12.     Defendant Kristine Aulepp, DO was at all relevant times the Clinical Director at FCI Milan, acting under color of federal law.

13.     Defendant Thomas McClain, MD was at all relevant times a Medical Officer at USMCFP Springfield, acting under color of federal law.

14.     Defendant Jeffrey Williams was at all relevant times the Warden of USMCFP Springfield, acting under color of federal law.

15.     Defendant Benjamin Keathley, DPT was at all relevant times a Physical Therapist at USMCFP Springfield, acting under color of federal law.

16.     John Roes 1-7 are unknown employees of the Federal Bureau of Prisons who, at all times relevant hereto, were acting within the scope of their employment at Federal Correctional Institution Milan and whose identities are currently unknown to Plaintiff.

    a. John Roes 1-2 are unknown supervisory and administrative staff responsible for implementing inmate separation protocols who failed to

4

ensure proper "keep separate" documentation and safety procedures for cooperating witnesses.

b.  John Roes 3-4 are unknown security and surveillance staff responsible for maintaining surveillance equipment and monitoring inmate activities who failed to properly maintain security systems and detect the coordinated gang assault.

c.  John Roe 5 represents unknown correctional officer(s) who were present during or immediately before the assault but failed to intervene timely or provide adequate assistance to prevent the life-threatening attack.

d.  John Roes 6-7 are unknown case management and classification staff, believed to be in the central inmate monitoring section, responsible for inmate classification and safety protocols who failed to properly separate inmates with known conflicts and implement adequate safety measures for vulnerable inmates like Plaintiff.

17.   The true names and identities of these defendants are unknown to Plaintiff at this time, and Plaintiff will seek leave to amend this Complaint to substitute their true names when discovered.

## FACTUAL ALLEGATIONS

**Background**

18.     Mr. Doe was serving a 180-month federal sentence for conspiracy to distribute controlled substances at the time of the incident described herein.

19.     As part of his plea agreement with federal prosecutors, Mr. Doe cooperated extensively with law enforcement and testified in multiple federal criminal proceedings against dangerous individuals involved in large-scale drug trafficking operations.

20.     Plaintiff testified in multiple trials, sentencing hearings, and grand jury proceedings, including proceedings against individuals associated with violent criminal organizations who have been documented in numerous federal cases as engaging in torture, murder, and other violent acts of retaliation.

21.     Federal authorities, including the U.S. Marshals Service, prosecutors in the Southern District of Texas, and Bureau of Prisons officials, knew or should have known that Mr. Doe faced substantial risk of serious bodily harm or death from cartel associates and other inmates due to his extensive cooperation and testimony that resulted in lengthy prison sentences for violent criminals.

22.     The Bureau of Prisons was specifically aware of the danger posed by housing cooperating witnesses with individuals they had testified against, and had established "keep separate" protocols to prevent such dangerous housing

arrangements. These individuals are supposed to be included in the central inmate classification system maintained by the BOP.

23.     Despite this requirement, Plaintiff and "Richard Roe" were both housed at FCI Milan, with no "keep separate" designation in their files to prevent their placement in the same facility.

**The Assault**

24.     In early August 2023, "Richard Roe", against whom Mr. Doe had provided testimony, was transferred to FCI Milan and housed in the same facility as Mr. Doe, in direct violation of established keep-separate protocols.

25.     While the assault would occur within days of Richard Roe's arrival, Mr. Doe immediately recognized the danger and reported it to Defendant Romero Licata within 24-48 hours of Richard Roe's arrival at FCI Milan.

26.     Upon information and belief, this transfer occurred due to the negligence and deliberate indifference of federal officials, including U.S. Marshals and BOP personnel, who failed to properly file or implement keep-separate orders that should have prevented Richard Roe from being housed at the same institution as Mr. Doe.

27.     Almost immediately upon Richard Roe's arrival at FCI Milan, he began spreading information that Mr. Doe was a "snitch" whose testimony had contributed to his incarceration, thereby placing Mr. Doe in immediate and substantial danger.

28.     Mr. Doe, recognizing the extreme danger posed by Richard Roe's presence, immediately reported the situation to his case manager, Defendant Dominique Romero Licata, requesting that appropriate action be taken to ensure his safety.

29.     Mr. Doe's criminal attorney also contacted Federal employees to request safety and protection for Mr. Doe due to the presence of Richard Roe at the facility and Mr. Doe's prior testimony.

30.     Despite Mr. Doe and his attorney's urgent reports about the substantial risk posed by Richard Roe's presence and requests for safety, Defendants, including Defendants BOP, USA, and Dominque Romero Licata failed to take adequate protective measures and did not immediately implement existing keep-separate protocols.

31.     FCI Milan officials initially refused to act on Mr. Doe's requests for protection, with some officials incorrectly stating that Richard Roe was not a co-defendant of Mr. Doe and therefore no conflict existed.

32.     Only after Assistant U.S. Attorney Anthony Geller confirmed the existence of keep-separate requirements and faxed corroborating documentation to Defendant Romero Licata did FCI Milan officials belatedly move Richard Roe to the Special Housing Unit, but this action came too late as Richard Roe had already initiated plans for the assault.

33.     Upon information and belief, Richard Roe paid members of the Pisas gang approximately $5,000 to assault Mr. Doe, demonstrating the premeditated nature of the attack and the substantial risk that Defendants knew or should have known existed.

34.     Despite being aware of the threats against Mr. Doe and the substantial risk of harm, Defendants failed to take adequate protective measures, including failing to place Mr. Doe in protective custody, failing to transfer him to a different facility, and failing to provide adequate security in his housing unit.

35.     On August 9, 2023, at approximately 8:30 p.m., Mr. Doe was returning to his housing unit after recreation time when he encountered a large group of inmates belonging to a known prison gang who had been lying in wait for him in the unit.

36.     The gang members confronted Mr. Doe and told him that he would not be allowed into the housing unit and that he should check in at the Lieutenant's Office, which in prison parlance means to request protective custody due to safety concerns.

37.     Mr. Doe attempted to seek assistance from correctional staff but was unable to find help before the group surrounded him and began to attack him.

38.     The assailants used improvised weapons, including locks suspended from trouser belts (known as "lock in a sock" weapons), knives, and walking canes.

9

39.     The gang members beat Mr. Doe mercilessly, with multiple attackers striking him repeatedly in the head with the steel lock, causing his skull to be crushed and creating deep, permanent depressions in his head.

40.     Defendant Correctional Officer Alan Gregory witnessed the assault in progress, for over thirty seconds, and specifically observed an inmate strike Mr. Doe in the head with a lock in a sock, yet failed to prevent the attack or provide timely intervention.

41.     The attack continued for several minutes, during which Mr. Doe lost consciousness multiple times from the severe head trauma and blood loss, while the gang members continued their assault with deadly weapons.

42.     Mr. Doe attempted to defend himself but was unable to escape the coordinated attack by the large group of assailants armed with deadly weapons.

43.     The assault only ceased when correctional officers finally intervened, by which time Mr. Doe had sustained life-threatening injuries and was bleeding profusely from multiple severe head wounds.

44.     Plaintiff was transported to St. Joseph Hospital in Ann Arbor, Michigan, where he remained hospitalized for approximately five weeks.

45.     As a direct result of the assault, Mr. Doe suffered severe and permanent injuries that have fundamentally altered every aspect of his life, including but not limited to:

a.  Traumatic brain injury with right parietal skull fracture;

b.  Trace subarachnoid hemorrhage;

c.  Left shoulder injury, partial thickness rotator cuff tear and superior labral tear requiring ongoing treatment and possible future surgery;

d.  Left wrist injury including bone chips and ligament damage;

e.  Spinal / Back injury requiring surgery (Right L5-S1 hemilaminectomy and microdiscectomy performed on August 23, 2023);

f.  Severe cognitive impairments in memory, attention, language processing, and executive function;

g.  Chronic Pain Syndrome;

h.  Post-Traumatic Stress Disorder;

i.  And any additional injuries not specifically enumerated herein.

**Post-Assault Medical Neglect**

46.     After his hospitalization, Plaintiff was returned to FCI Milan and placed in the Special Housing Unit (SHU), where Richard Roe was also being held, further endangering Plaintiff's safety and disregarding his wellbeing.

47.     The SHU lacked appropriate accommodations for Plaintiff's disabilities resulting from the assault, including his inability to walk and need for a wheelchair.

11

48.     Following the assault, medical staff at FCI Milan, under the supervision of Defendant Dr. Kristine Aulepp as Clinical Director, exhibited deliberate indifference to Mr. Doe's serious medical needs by failing to provide adequate and timely medical care for his life-threatening injuries.

49.     Despite Mr. Doe suffering obvious traumatic brain injury, skull fractures, and other serious injuries, FCI Milan medical staff delayed necessary diagnostic testing, specialist consultations, and appropriate neurological monitoring.

50.     Mr. Doe was forced to repeatedly submit inmate request forms to obtain basic medical attention for obvious and serious medical needs, which were knowingly ignored or dismissed by medical staff who were aware of the severity of his conditions.

51.     Defendant Dr. Aulepp, in her role as Clinical Director, had supervisory responsibility for ensuring constitutional standards of medical care were met at FCI Milan and was deliberately indifferent to the serious medical needs of Mr. Doe through her failure to establish, implement, or enforce adequate medical protocols for Mr. Doe's care.

52.     Despite knowledge of Mr. Doe's severe post-assault injuries (traumatic brain injury, skull fractures, spinal injuries requiring surgery), Dr. Aulepp failed to ensure her facility provided constitutionally adequate care.

53.     Dr. Aulepp knew that Mr. Doe had sustained life-threatening traumatic brain injury with skull fractures and trace subarachnoid hemorrhage requiring immediate and ongoing neurological monitoring. Despite this knowledge, Dr. Aulepp failed to establish protocols for adequate neurological monitoring, specialist consultations, and diagnostic testing following Mr. Doe's return from hospitalization.

54.     Dr. Aulepp allowed medical staff under her supervision to dismiss Mr. Doe's legitimate pain complaints and minimize his obvious medical needs despite clear documentation of serious injuries.

55.     Dr. Aulepp knew that Mr. Doe required accessible housing accommodations due to his mobility limitations, balance issues, and traumatic brain injury. Despite this knowledge, Dr. Aulepp allowed Mr. Doe to be housed in the SHU where the unit had no accessible accommodations.

56.     After being transferred to the U.S. Medical Center for Federal Prisoners (USMCFP) in Springfield, Missouri, Defendant Dr. Thomas McClain continued to exhibit deliberate indifference to Mr. Doe's serious medical needs through the following:

    a.  Systematically and deliberately dismissing Mr. Doe's documented medical complaints about severe symptoms;

b. Consciously refusing to provide obviously necessary medical interventions; and

c. Deliberately withholding adequate pain medication based on personal beliefs rather than medical necessity.

57.    For example, Dr. McClain falsely wrote in the medical record that Mr. Doe was not experiencing shoulder pain, when Mr. Doe had made numerous requests for treatment due to ongoing shoulder pain following the assault. It took Dr. McClain six months to order appropriate diagnostic testing that revealed a superior labral tear that required orthopedic consultation and potential future surgical intervention.

58.    Defendant Keathley demonstrated deliberate indifference to Mr. Doe's serious medical needs at USMCFP by the following:

a. Consciously disregarding Mr. Doe's reports of severe pain and functional limitations;

b. Deliberately pushing him beyond his medical capacity despite awareness of his traumatic brain injury;

c. Making false statements to prescribing physicians about his treatment needs and attitude;

d. Failing to be present for scheduled therapy sessions; and

e. Premature and retaliatory discharge from necessary therapy.

14

59.     Defendants and other medical personnel demonstrated deliberate indifference through an ongoing conscious denial of care by deliberately refusing to address Mr. Doe's repeated reports of severe headaches, neurological symptoms, balance problems, and other serious medical issues despite obvious medical necessity and awareness of his traumatic brain injury.

60.     Defendants and other medical personnel demonstrated deliberate indifference through willful ignorance to medical requests by deliberately ignoring Mr. Doe's repeated inmate request forms seeking medical attention for obvious and serious symptoms, despite being aware of his constitutional right to adequate medical care.

61.     Defendants and other medical personnel demonstrated deliberate indifference through deliberate denials of medical equipment by consciously refusing to provide obviously necessary medical equipment such as wheelchairs and protective helmets despite clear medical necessity and safety concerns, and despite knowledge that denial could result in further injury

62.     Defendant Williams, as Warden at USMCFP, demonstrated deliberate indifference as a supervisor for his conscious failure to address known systemic deficiencies in medical care delivery at Springfield despite awareness of constitutional violations occurring under his supervision.

63.     Despite knowledge of Mr. Doe's severe post-assault injuries (traumatic brain injury, mobility limitations, cognitive impairments), Defendant Williams failed to ensure his facility provided constitutionally adequate care and was deliberately indifferent in the following ways:

a. Defendant Williams knowingly failed to provide accessible housing for Mr. Doe's documented disabilities, including his inability to walk independently and need for wheelchair accommodation.

b. Defendant Williams allowed Mr. Doe to be housed in units lacking proper accessibility features despite clear medical documentation of his need for reasonable accommodations under the ADA / Rehabilitation Act.

c. Defendant Williams was aware that Mr. Doe had serious medical conditions requiring accommodation, yet continued inadequate housing arrangements.

d. Defendant Williams maintained policies that resulted in the provision of inadequate medical equipment, including an ill-fitting wheelchair that Mr. Doe repeatedly complained did not fit properly.

e. Defendant Williams created an institutional culture where medical complaints from seriously injured inmates were systematically dismissed or minimized rather than properly evaluated and treated;

16

f.  Defendant Williams failed to ensure adequate training of medical staff regarding constitutional obligations to provide adequate medical care to inmates with serious medical needs;

g.  And any other acts and omissions learned during discovery.

64.   Despite multiple inmate requests and medical documentation, Defendant Williams failed to ensure timely provision of proper mobility equipment, forcing Mr. Doe to use defective equipment that caused additional pain and mobility issues.

65.   These actions were not mere disagreements about treatment approaches or negligent medical care, but rather constituted conscious and knowing disregard of Mr. Doe's serious medical needs by individuals who were fully aware of his conditions and the constitutional requirements for prison medical care.

66.   The pattern of deliberately dismissing obvious symptoms, consciously denying necessary care, and willfully ignoring constitutional obligations demonstrates subjective awareness of substantial risk combined with conscious disregard of that risk.

67.   Defendants' deliberate indifference caused Mr. Doe unnecessary pain and suffering, worsened his medical condition, and contributed to the permanent nature of many of his disabilities.

**Disability Discrimination**

68.     As a result of his injuries, Mr. Doe has qualifying disabilities under the Americans with Disabilities Act and the Rehabilitation Act, including traumatic brain injury with cognitive impairments, mobility impairments requiring assistive devices, chronic pain conditions, and other substantially limiting conditions.

69.     Defendants, FCI Milan and USMCFP, as public entities operating federal correctional facilities, are subject to the requirements of Section 504 of the Rehabilitation Act, which incorporates standards similar to those of Title II of the ADA.

70.     Defendants discriminated against Mr. Doe on the basis of his disabilities by systematically failing to provide reasonable accommodations, including:

    a.  Failing to provide accessible housing appropriate for his mobility limitations, balance problems, and need for protective equipment;

    b.  Failing to modify prison programs, work assignments, and activities to for his cognitive impairments, physical limitations, and medical needs;

    c.  Failing to provide accommodations for his cognitive processing deficits and memory impairments when communicating important information;

18

d.  Initially refusing to provide necessary assistive devices such as wheelchairs, walkers, and protective helmets despite clear medical necessity; and

e.  Housing Mr. Doe in the Special Housing Unit (SHU) at FCI Milan, which lacked any accessibility accommodations for his significant disabilities.

71.    Mr. Doe was excluded from participation in prison programs and services due to his disabilities, and Defendants failed to make reasonable modifications to their policies, practices, and procedures to ensure equal access.

72.    Defendants' facilities and programs were not accessible to individuals with disabilities like Mr. Doe, violating architectural and programmatic accessibility requirements.

73.    The individual Defendants in supervisory positions, including the Wardens, Dr. Aulepp, and administrators, are liable for the constitutional violations alleged herein based on their personal involvement in establishing and maintaining unconstitutional policies, practices, and customs.

74.    Defendants established and maintained policies, practices, and customs that created a substantial risk of constitutional violations, including:

a.  Inadequate Keep-Separate procedures including failing to establish and enforce adequate procedures to ensure that cooperating witnesses are not housed with individuals they testified against;

b.  Insufficient training including failing to adequately train staff on the identification and protection of vulnerable inmates, including cooperating witnesses;

c.  Inadequate medical policies including maintaining policies that discourage or prevent adequate medical care for inmates with serious medical needs;

d.  Disability discrimination including maintaining policies that systematically deny reasonably accommodations to inmates with disabilities.

75.    The supervisory Defendants knew or should have known that their policies and practices created a substantial risk that constitutional violations would occur, yet they acted with deliberate indifference to these risks.

76.    The violations alleged herein were not isolated incidents but rather the result of systemic deficiencies in training, supervision, and policy implementation for which the supervisory Defendants are responsible.

**John Roes**

77.    John Roes 1-2, unknown supervisory and administrative staff at FCI Milan, had actual knowledge that Plaintiff was a cooperating witness for the United States government who had testified against multiple defendants, including Richard Roe, who was housed at the same facility as Plaintiff.

78.    Despite this knowledge, John Roes 1-2 deliberately failed to implement proper separation protocols and "keep separate" documentation that would have prevented the housing of conflicting inmates in the same facility. Their deliberate indifference to Plaintiff's obvious safety risks directly contributed to the August 9, 2023, assault that nearly cost Plaintiff his life.

79.    John Roes 3-4, unknown security and surveillance staff at FCI Milan, failed to maintain adequate surveillance of Unit F-1, including allowing the camera facing the location of the assault to be pointed in the wrong direction, thereby compromising their ability to prevent and respond to violent incidents.

80.    John Roes 3-4's deliberate indifference to proper security protocols enabled the coordinated gang assault on Plaintiff to occur without detection or timely intervention, demonstrating a conscious disregard for Plaintiff's constitutional right to be free from harm while in custody.

81.    John Roe 5, an unknown correctional officer, failed to provide adequate backup or assistance to stop the life-threatening attack and failed to prevent

dangerous weapons, including combination locks, socks, and walking canes, from being accessible to inmates, demonstrating deliberate indifference to Plaintiff's safety and constitutional rights.

82.     John Roes 6-7, unknown case management / classification staff, knew or should have known that Plaintiff required special protection as a cooperating witness who had testified against multiple defendants housed within the federal prison system. Upon information and belief, John Roes were within the central inmate monitoring section and tasked with overseeing the central inmate classification system.

83.     Despite this knowledge and responsibility, John Roes 6-7 failed to properly classify and separate inmates with known conflicts, failed to review and act on separation requirements for cooperating witnesses, and failed to implement proper safety protocols for vulnerable inmates like Plaintiff. Their deliberate indifference to established safety procedures directly enabled the August 9, 2023, assault that resulted in Plaintiff's severe and permanent injuries.

## COUNT I
## CIVIL RIGHTS VIOLATION – EIGHTH AMENDMENT
### Deliberate Indifference to Substantial Risk of Harm
**Against Defendants Licata, Rardin, Gregory, John Roes 1-7**

84.     Plaintiff incorporates by reference all preceding paragraphs.

85.     At all relevant times, Mr. Doe was in the custody and under the care of the BOP at FCI Milan.

86.     The Eighth Amendment to the United States Constitution prohibits cruel and unusual punishment and imposes a duty on prison officials to take reasonable measures to guarantee the safety of inmates.

87.     Defendants had actual knowledge that Mr. Doe faced a substantial risk of serious harm due to his status as a federal cooperating witness who had testified against violent individuals who were improperly housed in the same facility as Mr. Doe.

88.     The risk to Mr. Doe was objectively serious, as demonstrated by the fact that he had previously been placed in protective custody due to threats, and cooperating witnesses are well-known to face substantial risks of violent retaliation from those they testify against.

89.     Defendants had subjective knowledge of this substantial risk through multiple sources, including but not limited to:

    a.  Mr. Doe's direct reports to case manager Dominique Romero Licata about the danger posed by Richard Roe's presence due to Mr. Doe's cooperating testimony;

b. Mr. Doe's criminal attorney's direct reports to Federal officials about the danger posed by Richard Roe's presence due to Mr. Doe's cooperating testimony;

c. The existence of keep-separate orders that specifically prohibited housing Mr. Doe with Richard Roe;

d. Richard Roe's known association with violent criminal organizations;

e. Mr. Doe's history of receiving threats and requiring protective custody.

90.   Despite this knowledge, Defendants were deliberately indifferent to Mr. Doe's safety by failing to implement adequate protective measures, including failing to prevent the improper housing arrangement, failing to place Mr. Doe in protective custody, failing to remove Mr. Doe or Richard Roe from the facility, failing to provide adequate security and supervision, and failing to intervene promptly when the assault began.

91.   Defendants' deliberate indifference to Plaintiff's safety violated his clearly established Eighth Amendment right to be protected from violence at the hands of other inmates.

92.   Defendants' deliberate indifference directly and proximately caused the brutal assault on Mr. Doe and his resulting catastrophic injuries, permanent disabilities, and ongoing suffering.

24

WHEREFORE, Plaintiff requests judgment against the individual Defendants for compensatory and punitive damages in an amount to be determined at trial, plus costs, interest, and attorney fees, and such other relief as the Court deems just and proper.

## COUNT II
## CIVIL RIGHTS VIOLATION – EIGHTH AMENDMENT
### Deliberate Indifferent to Serious Medical Needs
**Against Defendants Aulepp, Rardin, McClain, Keathley, Williams**

93.     Plaintiff incorporates by reference all preceding paragraphs.

94.     The Eighth Amendment requires prison officials to provide adequate medical care for inmates' serious medical needs. Deliberate indifference to serious medical needs constitutes cruel and unusual punishment.

95.     Mr. Doe suffered from objectively serious medical conditions requiring immediate and ongoing medical attention, including traumatic brain injury with skull fractures, spinal injuries requiring surgery, cognitive impairments, chronic pain, and psychological trauma.

96.     Defendants had actual knowledge of Mr. Doe's serious medical needs through direct observation of his injuries, medical records documenting his conditions, and Mr. Doe's repeated requests for medical attention.

97.     Despite this knowledge, Defendants were deliberately indifferent to Mr. Doe's serious medical needs as described above and including but not limited to:

   a.  Housing Mr. Doe in inaccessible accommodations;

   b.  Provision of inadequate medical equipment;

   c.  Deliberate minimization and dismissal of legitimate medical complaints and medically necessary requests;

   d.  Systemic and intentional delays in necessary medical care;

   e.  Failing to timely provide necessary medical equipment;

   f.  Falsifying medical records;

   g.  Any other actions or failures described herein and/or learned during discovery.

98.     Defendants' deliberate indifference caused Mr. Doe unnecessary pain and suffering, worsened his medical condition, and contributed to the permanent nature of his disabilities.

WHEREFORE, Plaintiff requests judgment against the individual Defendants for compensatory and punitive damages in an amount to be determined at trial, plus costs, interest, and attorney fees, and such other relief as the Court deems just and proper.

### COUNT III
### Federal Tort Claims Act – Negligence & Gross Negligence
### Against the United States of America

99.     Plaintiff incorporates by reference all preceding paragraphs.

100.    The United States is liable under the Federal Tort Claims Act for the negligent acts and omissions of its employees acting within the scope of their employment.

101.    At all times relevant hereto, the United States of America, acting through the Federal Bureau of Prisons and its employees at Federal Correctional Institution Milan ("FCI Milan"), owed Plaintiff a duty of reasonable care to provide for his safety and security while incarcerated.

102.    At all times relevant hereto, Defendants were employed by the Federal Bureau of Prisons and were acting within the scope of their employment.

103.    On August 9, 2023, at approximately 8:40 PM, Defendant Gregory had supervisory control over Unit F-1 Housing Unit where Plaintiff was housed.

104.    The United States, through its employees, had actual knowledge that Plaintiff had served as a cooperating witness for the United States government and had testified against multiple defendants, including Richard Roe.

105.    The United States, through its employees, knew or should have known that housing Plaintiff in the same facility as individuals against whom he had testified created a substantial and unreasonable risk of harm to Plaintiff.

27

106.     On the date and time in question, Plaintiff was violently assaulted by a group of inmates armed with dangerous weapons including locks in socks, knives, and walking canes in Unit F-1.

107.     Defendant Gregory witnessed inmates strike and violently assault Plaintiff.

108.     The United States, through its employees, grossly breached their duty of care by including but not limited to:

    a.  Failing to implement adequate safeguards to protect Plaintiff from retaliation;

    b.  Allowing Richard Roe to be housed at the same institution as Plaintiff;

    c.  Failing to properly monitor and supervise inmates known to pose a threat to Plaintiff;

    d.  Allowing the assault to continue for approximately thirty seconds before meaningful intervention;

    e.  Failing to maintain adequate security and surveillance of the area where the assault occurred, including maintaining the camera facing the location of the assault pointed in the wrong direction;

    f.  Failing to properly secure and monitor dangerous inmates and weapons;

    g.  Ignoring reports and warnings regarding threats to Plaintiff's safety;

h.  Failing to take reasonable security measures despite Plaintiff's vulnerable status as a cooperating witness;

i.  Any other actions or failures learned during discovery.

109.   The negligent acts and omissions of BOP employees were committed within the scope of their employment with the United States

110.   The United States' conduct, through its employees, constituted negligence and gross negligence in that it demonstrated:

a.  A reckless disregard for Plaintiff's safety and well-being;

b.  A complete failure to exercise even slight care in protecting Plaintiff from the ongoing violent assault;

c.  Inexcusable delay in intervening to stop the life-threatening attack;

d.  Conduct so careless as to indicate a conscious indifference to Plaintiff's safety.

111.   As a direct and proximate result of the United States' gross negligence, Plaintiff has suffered and will continue to suffer substantial damages including medical expenses, pain and suffering, permanent disability, and loss of enjoyment of life.

WHEREFORE, Plaintiff requests judgment against the United States of America for compensatory damages in an amount to be determined at trial, plus costs and interest, and such other relief as the Court deems just and proper.

## COUNT IV
### Rehabilitation Act Claim - 29 U.S.C. § 794
### Against the Federal Bureau of Prisons

112.   Plaintiff incorporates by reference all preceding paragraphs.

113.   Section 504 of the Rehabilitation Act prohibits discrimination against qualified individuals with disabilities in programs or activities that receive federal financial assistance.

114.   The Federal Bureau of Prisons receives federal financial assistance and is subject to the requirements of the Rehabilitation Act.

115.   Following the assault, Plaintiff became a qualified individual with disabilities due to his traumatic brain injury, mobility impairments, and other physical and cognitive limitations.

116.   The BOP discriminated against Plaintiff on the basis of his disabilities by systematically failing to provide reasonable accommodations by including but not limited to:

    a.  Failing to provide reasonable accommodations for his disabilities;

    b.  Placing him in the SHU, which lacked appropriate accommodations;

    c.  Failing to provide an appropriate wheelchair and other necessary assistive devices;

    d.  Failing to provide accessible facilities;

    e.  Failing to provide timely and appropriate rehabilitation services;

f.  Failing to provide accessible housing appropriate for his mobility limitations, balance problems, and need for protective equipment;

g.  Failing to modify prison programs, work assignments, and activities to for his cognitive impairments, physical limitations, and medical needs;

h.  Failing to provide accommodations for his cognitive processing deficits and memory impairments when communicating important information;

i.  Initially refusing to provide necessary assistive devices such as wheelchairs, walkers, and protective helmets despite clear medical necessity; and

j.  Housing Mr. Doe in the Special Housing Unit (SHU) at FCI Milan, which lacked any accessibility accommodations for his significant disabilities.

k.  Any other actions or failures described herein and/or learned during discovery.

117.  Defendants' discrimination was intentional, as evidenced by their pattern of refusing reasonable accommodation requests and their failure to make necessary modifications despite clear notice of Mr. Doe's disabilities and needs.

118.  Defendants' facilities and programs were not accessible to individuals with disabilities like Mr. Doe, violating both programmatic and architectural accessibility requirements.

119.    As a direct and proximate result of the BOP's discrimination, Plaintiff suffered physical and emotional injuries, as well as loss of benefits and services to which he was entitled.

WHEREFORE, Plaintiff requests judgment against the Federal Bureau of Prisons for compensatory damages in an amount to be determined at trial, plus costs, interest, and attorney fees, and such other relief as the Court deems just and proper.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiff John Doe respectfully requests that this Court enter judgment in his favor and against Defendants, jointly and severally, as follows:

    a. Compensatory damages in an amount to be determined at trial, but not less than $100,000,000.00;

    b. Punitive damages against the individual Defendants in an amount to be determined at trial, but not less than $100,000,000.00;

    c. Reasonable attorney fees and costs pursuant to applicable law;

    d. Prejudgment and post-judgment interest; and

    e. Such other and further relief as this Court deems just and proper.

Respectfully submitted,

MIKE MORSE LAW FIRM,
Attorneys for Plaintiff

Dated: July 7, 2025

*/s/ Madeline M. Sinkovich*
Madeline M. Sinkovich (P82846)
24901 Northwestern Highway, Suite 700
Southfield, Michigan  48075
Madeline.sinkovich@855mikewins.com
248-621-2245

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

JOHN DOE,

     Plaintiff,                             Case No.

v.                                     Hon.

UNITED STATES OF AMERICA;
FEDERAL BUREAU OF PRISONS;
ERIC RARDIN; DOMINIQUE LICATA
ROMERO; ALAN GREGORY;
KRISTINE AULEPP; JEFFREY
WILLIAMS; THOMAS MCCLAIN;
BENJAMIN KEATHLEY;
JOHN ROE OFFICERS 1-7.

     Defendants.

---

MARC J. MENDELSON (P52798)
MADELINE M. SINKOVICH (P82846)
MIKE MORSE LAW FIRM
24901 Northwestern Highway, Suite 700
Southfield, MI 48075
(248) 350-9050
madeline.sinkovich@855mikewins.com
Attorneys for Plaintiff

---

## JURY DEMAND

     Plaintiff respectfully demands a trial by jury of all issues so triable, pursuant

to Fed. R. Civ. P. 38(b).

                      Respectfully submitted,

                      MIKE MORSE LAW FIRM

Dated: July 7, 2025

*/s/ Madeline M. Sinkovich*
Madeline M. Sinkovich (P82846)
24901 Northwestern Highway, Suite 700
Southfield, Michigan  48075
Madeline.sinkovich@855mikewins.com
248-621-2245