UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| JOHN DOE,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA, et al.,<br><br>Defendants. | Case No. 25-cv-12030<br><br>Honorable Robert J. White |

**OPINION AND ORDER GRANTING IN PART AND STAYING CONSIDERATION IN PART THE INDIVIDUAL DEFENDANTS' MOTION TO PARTIALLY DISMISS THE COMPLAINT OR, ALTERNATIVELY, FOR PARTIAL SUMMARY JUDGMENT AND DENYING THEIR MOTION TO STAY THE CASE AS MOOT**

I. Introduction

John Doe commenced this implied cause of action, pursuant to *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), against several Bureau of Prisons ("BOP") employees for violating the Eighth Amendment to the United States Constitution. The complaint alleges, among other things, that a group of the BOP employees failed to take adequate measures to protect Doe from other inmates who beat him severely. Doe asserts that another group of

BOP employees exhibited deliberate indifference to the traumatic injuries he suffered after the assault.

Before the Court is the BOP employees' motion to dismiss the *Bivens* claims asserted against them in the complaint or, alternatively, for summary judgment on those causes of action. (ECF No. 27). Doe responded in opposition. (ECF No. 30). The BOP employees filed a reply. (ECF No. 33).

Also before the Court is the BOP employees' motion to stay the case. (ECF No. 37). The Court will decide the motions without a hearing pursuant to E.D. Mich. LR 7.1(f)(2). For the following reasons, (1) the dismissal motion is granted in part and consideration of another part is stayed, and (2) the stay motion is denied as moot.

## II. Background

### *A. Factual History*

#### 1. Federal Correctional Institution – Milan

A prison gang physically assaulted Doe at FCI Milan on August 9, 2023. (ECF No. 1, PageID.2, ¶ 1). The beating left Doe with significant physical injuries and impairments. (*Id.*, PageID.10-11, ¶ 45). When he returned to FCI Milan from the hospital weeks later, Doe alleges that prison medical staff exhibited deliberate indifference to his serious medical needs. (*Id.*, PageID.12-13, ¶¶ 48-55).

The complaint specifically alleges that:

- Eric Rardin, FCI Milan's warden, knew about a substantial risk that other inmates could seriously harm Doe, yet failed to

institute adequate measures to protect him. (ECF No. 1, PageID.23-24, ¶¶ 86-92).

- Dominique Romero-Licata, Doe's case manager, failed to "immediately implement existing keep-separate protocols" after learning that Doe had testified against another inmate who BOP recently transferred to FCI Milan. (*Id.*, PageID.8, ¶ 30). These measures included "failing to place Mr. Doe in protective custody, failing to transfer him to a different facility, and failing to provide adequate security in his housing unit." (*Id.*, PageID.9, ¶ 34).

- Alan Gregory, an FCI Milan corrections officer, witnessed the assault "for over thirty seconds, and specifically observed an inmate strike Mr. Doe in the head with a lock in a sock, yet failed to prevent the attack or provide timely intervention." (*Id.*, PageID.10, ¶ 40). And,

- Dr. Kristine Aulepp, FCI Milan's Clinical Director, failed to properly supervise FCI Milan's medical staff and "establish, implement, or enforce adequate medical protocols for Mr. Doe's care." (*Id.*, PageID.12, ¶¶ 49, 51; *see also id.*, PageID.12-13, ¶¶ 48, 50, 52-55).

2. United States Medical Center for Federal Prisoners – Springfield

BOP eventually transferred Doe to the United States Medical Center for Federal Prisoners, located in Springfield, Missouri ("USMCFP"). (*Id.*, PageID.13, ¶ 56). His treatment conditions did not improve. Doe maintains that prison medical staff, including the warden, acted with deliberate indifference to his serious medical condition. (*Id.*, PageID.13-17, ¶¶ 56-67). For instance, the complaint asserts that:

- Jeffrey Williams, USMCFP's warden, failed to provide adequate medical assistive devices, adequate training for the prison's medical staff, and accessible housing units to accommodate Doe's disabilities. (*Id.*, PageID.16-17, ¶¶ 63-65). Williams also

neglected to "address known systemic deficiencies in medical care delivery[.]" (*Id.*, PageID.15, ¶ 62).

- Dr. Thomas McClain, a USMCFP medical officer, falsified medical records about Doe's continuing shoulder pain and waited six months before ordering diagnostic tests, which revealed that Doe was suffering from a "superior labral tear that required orthopedic consultation and potential future surgical intervention." (*Id.*, PageID.14, ¶ 57; *see also id.*, PageID.13, ¶ 56). And,

- Benjamin Keathley, a USMCFP physical therapist, among other things, disregarded Doe's "reports of severe pain and functional limitations," lied about his "treatment needs and attitude," and prematurely discharged Doe from physical therapy in retaliation for his administrative complaints. (*Id.*, PageID.14, ¶ 58).

BOP has since discharged Doe from custody on compassionate release grounds.[1] (ECF No. 1, PageID.3, ¶ 6; *see also* ECF No. 30, PageID.273, 277).

*B. Procedural History*

Doe filed this lawsuit, alleging Eighth Amendment violations against the BOP employees pursuant to *Bivens*, claims for negligence and gross negligence against the United States of America pursuant to the Federal Tort Claims Act ("FTCA"), and violations of the Rehabilitation Act of 1973 against BOP.

In its August 12, 2026 opinion and order, the Court dismissed the FTCA and Rehabilitation Act claims, dismissed BOP as a party defendant, and permitted Doe

---

[1] Because Doe was not a prisoner when he commenced this lawsuit, the BOP employees acknowledge that his claims are not subject to the Prison Litigation Reform Act's exhaustion requirement. (ECF No. 33, PageID.395-96 n.2). *See* 42 U.S.C. § 1997e(a); *Cox v. Mayer*, 332 F.3d 422, 424-25 (6th Cir. 2003).

to file a motion for leave to amend the complaint to add an FTCA medical negligence claim against the United States of America. (ECF No. 36, PageID.434). The BOP employees now move to dismiss the *Bivens* claims asserted against them in the complaint or, alternatively, for summary judgment on those causes of action. (ECF No. 27).

III. Legal Standards

When reviewing a motion to dismiss the complaint for failing to state a claim, the Court must "construe the complaint in the light most favorable to the plaintiff and accept all factual allegations as true." *Daunt v. Benson*, 999 F.3d 299, 308 (6th Cir. 2021) (cleaned up); *see also* Fed. R. Civ. P. 12(b)(6). "The factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead sufficient factual matter to render the legal claim plausible." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (quotation omitted).

A moving party is entitled to summary judgment where the "materials in the record" do not establish the presence of a genuine dispute as to any material fact. Fed. R. Civ. P. 56(c). All the evidence, along with all reasonable inferences, must be viewed in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## IV. Analysis

### *A. Bivens – An Overview*

When Congress enacted the Civil Rights Act of 1871, it created a private cause of action against state actors who violate federal constitutional and statutory rights. *See* 42 U.S.C. § 1983. No comparable statute exists – even to this day – that authorizes a private right of action against federal officials.

In *Bivens*, the United States Supreme Court first recognized an implied cause of action to recover damages from federal officers who violate the federal constitution. *Elhady v. Unidentified CBP Agents*, 18 F.4th 880, 882 (6th Cir. 2021). Since deciding the case in 1971, the Supreme Court has implied a cause of action under *Bivens* in only three limited settings. *One* – where a federal agent conducts a warrantless search and unlawful arrest of the plaintiff in his residence in violation of the Fourth Amendment. *See Bivens*, 403 U.S. at 389-90. *Two* – where a Congress member terminates the plaintiff's employment because of her gender, in violation of the Fifth Amendment. *See Davis v. Passman*, 442 U.S. 228, 230-234 (1979). And *three* – where federal prison officials violate the Eighth Amendment after providing inadequate medical care to an inmate, resulting in his death. *See Carlson v. Green*, 446 U.S. 14, 16-18 (1980). After issuing this trilogy of cases, the Court has "consistently refused to extend *Bivens* liability to any new context or new category

of defendants." *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 68 (2001); *see also Enriquez-Perdomo v. Newman*, 149 F.4th 623, 630 (6th Cir. 2025) (collecting cases).

Nonetheless, the Supreme Court has formulated "a two-part inquiry to determine when" federal courts should "engage in the 'disfavored judicial activity' of recognizing a new *Bivens* action." *Elhady*, 18 F.4th at 883 (quotation omitted); *see also Ziglar v. Abbasi*, 582 U.S. 120, 135 (2017). The first question is "whether the case presents a new *Bivens* context – *i.e.*, is it meaningfully different from the three cases in which the Court has implied a damages action." *Enriquez-Perdomo*, 149 F.4th at 631.

If the case presents a new *Bivens* context, courts must then ask "whether any special factors counsel against extending a cause of action." *Elhady*, 18 F.4th at 883. Special factors include whether "Congress already has provided, or has authorized the Executive to provide, an alternative remedial structure." *Egbert v. Boule*, 596 U.S. 482, 493 (2022) (quotation omitted). The existence of alternative remedial structures "alone, like any special factor, is reason enough to limit the power of the Judiciary to infer a new *Bivens* cause of action." *Id.* (quotation omitted).

This level of scrutiny is "exacting." *Elhady*, 18 F.4th at 883. The occasions when the two-part test will favor implying a new *Bivens* action "will almost always be never." *Id.*

Doe's Eighth Amendment *Bivens* claims fall along two lines. They assert that (1) Rardin, Romero-Licata, Gregory, and seven unnamed BOP employees failed to take adequate measures to protect him from the inmates who assaulted him; and (2) Rardin, Williams, Dr. Aulepp, Dr. McClain, and Keathley exhibited deliberate indifference to the serious injuries he suffered in the assault's wake. The Court will analyze each of these theories to ascertain whether they raise a new *Bivens* context and, if so, whether any "special factors" exist that would preclude implying a *Bivens* action.

*B. Failure to Protect (Count I)*

1. New Context

Doe's failure-to-protect claim presents a new *Bivens* context. Again, at this step, the Court must ask whether the facts alleged in the complaint are "meaningfully different from" *Bivens*, *Davis*, and *Carlson*. *Enriquez-Perdomo*, 149 F.4th at 631. They are. None of the three central *Bivens* cases assign Eighth Amendment liability to prison officials who fail to protect inmates from being assaulted by other inmates. The closest analogue would be *Carlson*. But that case involved the alleged failure to provide adequate medical care to an inmate, not the failure to protect inmates from other prisoners who intend them harm. *See Carlson*, 446 U.S. at 16-18; *see also Ziglar*, 582 U.S. at 140 (designating the "constitutional right at issue" and the

"generality or specificity of the official action" as meaningful distinctions that would create a new *Bivens* context).

Doe disagrees with assessment. He argues that the Supreme Court recognized an Eighth Amendment *Bivens* failure-to-protect claim in *Farmer v. Brennan*, 511 U.S. 825 (1994). Two factors undermine this reading.

In *Farmer*, federal officials moved a transgender inmate to a BOP facility where they allegedly knew the prisoner would be exposed to a substantial risk of violence. *See id.* at 830-31. When another prisoner did attack him, the inmate sued for money damages under *Bivens*, alleging that BOP officials failed to take adequate precautions to ensure his safety in violation of the Eighth Amendment. *See id.* Overlooking whether the inmate's circumstances actually aligned with *Bivens*, the Supreme Court saw *Farmer* instead as a vehicle to elucidate the Eighth Amendment's deliberate indifference standard. In vacating the award of summary judgment in the BOP officials' favor and remanding the case for further proceedings, the Court referenced *Bivens* only twice in passing. *See id.* at 830, 839.

But the *Farmer* Court assumed – without deciding – that *Bivens* implied an Eighth Amendment right mandating that BOP officials protect inmates from substantial risks of serious harm posed by other prisoners. It never examined and expressly recognized whether *Bivens* implied such a right under the federal constitution. And the Supreme Court has subsequently disclaimed its own previous

authorities where it assumed the existence of a *Bivens* action without analyzing explicitly whether *Bivens* extended to the particular factual setting under consideration. *See Egbert*, 596 U.S. at 498-99 (declining to expand *Bivens* to imply First Amendment retaliation claims although the Court previously "assumed that such a damages action might be available"); *see also Fisher v. Hollingsworth*, 115 F.4th 197, 204-05 (3d Cir. 2024) ("Under this rubric . . . *Farmer* is out."); *Sargeant v. Barfield*, 87 F.4th 358, 365 (7th Cir. 2023) (declining to infer a *Bivens* claim from *Farmer* where "[t]he Court never held – just assumed – that a *Bivens* remedy was available to the plaintiff."); *Bulger v. Hurwitz*, 62 F.4th 127, 138-39 (4th Cir. 2023) (same).

Another data point is material as well. The Supreme Court has never added *Farmer* to the pantheon of cases establishing implied *Bivens* remedies. The list includes *Bivens* itself, *Davis*, and *Carlson*. Nothing more. And recall that at the two-step inquiry, the first question asks whether a new case is "meaningfully different from the *three* cases in which the Court has implied a damages action." *Egbert*, 596 U.S. at 492 (cleaned up) (emphasis added). So the Supreme Court fashioned the two-step inquiry presupposing that only *three* cases – *Bivens*, *Davis*, and *Carlson* – had ever implied *Bivens* remedies, not four.

Because the complaint's allegations are "meaningfully different from" *Bivens*, *Davis*, and *Carlson*, and since the Supreme Court's decision in *Farmer* does not alter this conclusion, Doe raises a new *Bivens* context.

2. Special Factors

Since the complaint presents a new *Bivens* context, the next question is "whether any special factors counsel against extending" *Bivens* to this factual setting. *Elhady*, 18 F.4th at 883. A *Bivens* action is "unavailable if there are special factors indicating that the Judiciary is at least arguably less equipped than Congress to weigh the costs and benefits of allowing a damages action to proceed." *Egbert*, 596 U.S. at 492 (quotation omitted). Federal courts lack the authority to "create a cause of action if there's a single sound reason to leave that choice to Congress." *Elhady*, 18 F.4th at 883 (quotation omitted); *see also Egbert*, 596 U.S. at 492.

Two "special factors" are apparent in this case. The first is the heightened risk that implying a *Bivens* action under these circumstances will interfere with BOP's internal operations, which infringes upon an executive branch function. *See Sargeant*, 87 F.4th at 367. Recognizing a failure-to-protect theory against prison officials who are charged with the responsibility for implementing inmate segregation protocols – like the Central Inmate Monitoring System, 28 C.F.R. §§ 524.70-76 – will impact how they (1) assess the risk of harm posed to monitored inmates, (2) evaluate and verify prisoner-supplied information about looming risks

to monitored inmates, and (3) decide where to house monitored inmates. All these considerations necessarily affect "a prison's determinations about safety, discipline, and resources." *Id.* at 367. What is more, the Court lacks the resources and expertise to "predict the 'systemwide' consequences" that may result from implying a *Bivens* remedy based upon the facts asserted in the complaint. *Egbert*, 596 U.S. at 493 (quotation omitted). "That uncertainty alone is a special factor that forecloses relief." *Id.*

The second special factor depends upon whether Congress "already has provided, or has authorized the Executive to provide, 'an alternative remedial structure.'" *Egbert*, 596 U.S. at 493 (quotation omitted). It has and that is "reason enough" to decline implying a new *Bivens* action. *Id.*

About fifteen years after the Supreme Court decided *Carlson*, Congress enacted the Prison Litigation Reform Act of 1995 ("PLRA"). The statute requires, among other things, that inmates exhaust any prison grievance procedures offered to them before commencing a lawsuit in federal court. *See* 42 U.S.C § 1997e(a). In the federal system, inmates may seek "formal review" of issues relating to "any aspect of" their "confinement" through BOP's Administrative Remedy Program. 28 C.F.R. § 542.10(a).

But while the PLRA does not bar inmates from instituting *Bivens* actions expressly, the statute's final version appears to "counsel against extending" *Bivens*

to this case. *Elhady*, 18 F.4th at 883. Congress, for example, could have employed the PLRA as a way to expand the availability of money damages to federal inmates who suffer constitutional harms. *See Ziglar*, 582 U.S. at 148-49. It did not, which "suggests [that] Congress chose not to extend the *Carlson* damages remedy to cases involving other types of prisoner mistreatment." *Id.* at 149. And both the Supreme Court and the Sixth Circuit have stressed, time and again, how this omission should foster a hesitancy to fashion new *Bivens* remedies in the prison context. *See Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 74 (2001); *see also Patton v. Blackburn*, No. 21-5995, 2023 U.S. App. LEXIS 10715, at *7-8 (6th Cir. May 2, 2023); *Callahan v. Fed. Bureau of Prisons*, 965 F.3d 520, 524 (6th Cir. 2020).

Doe contends that the PLRA and BOP's Administrative Remedy Program cannot be "special factors" since he could not utilize those procedures after his compassionate release from prison and before filing suit. (ECF No. 30, PageID.290, 292). He also maintains that both provisions are not implicated in this litigation because he is not mounting "a systemic challenge to prison policy." (*Id.*, PageID.289). Both arguments misconceive the nature of the "special factors" inquiry.

The "special factors" analysis is concerned primarily with maintaining the structural integrity of the separate branches of government. That means preserving the constitutional separation of powers between the judicial, executive, and

legislative branches with the aim of curbing judicial intrusion into the other two departments' core functions. *See Elhady*, 18 F.4th at 883 (stating that "judges interpret laws. We do not make them . . . It is Congress's job to decide when to provide a cause of action against federal employees."). It is not an individualized, case-by-case assessment or dependent upon personal circumstances. *See Sargeant*, 87 F.4th at 367 (rejecting an inmate's argument that no special factors exist because his claim only "challenge[d] the rogue actions of a rank-and-file official, not the Bureau of Prisons' policies.").

The PLRA's enactment – without the inclusion of a mechanism allowing federal prisoners to recover money damages stemming from constitutional torts – is a "special factor" because it evidences congressional intent. Congress could have opted to include such a procedure in the PLRA. The decision to forgo this route, indicates that Congress "chose not to extend" *Bivens* beyond the *Carlson* failure-to-treat paradigm. *See Ziglar*, 582 U.S. at 149. And that legislative judgment call is a "special factor" entitled to a generous measure of judicial deference. So, ultimately, whether Doe could have availed *himself* of the PLRA or BOP's Administrative Remedy Program is beside the point.

To sum up, implying a *Bivens* action in this case runs the risk of interfering with BOP's internal operations and undermining the "alternative remedial structure" Congress enacted with the PLRA. The presence of these two "special factors,"

coupled with the Court's finding that the complaint raises a new *Bivens* context, means that Doe's Eighth Amendment failure-to-protect claim cannot proceed under *Bivens*.

*C. Failure to Treat (Count II)*

1. New Context

Doe's failure-to-treat claim poses a different problem. Whether it is "meaningfully different" from *Carlson* touches upon an emerging split among the federal courts of appeals. They are divided over whether to recognize an Eighth Amendment *Bivens* action where federal prison officials exhibit deliberate indifference to an inmate's non-emergent, non-life-threatening condition. *Compare Muniz v. United States*, 149 F.4th 256, 264-65 (3d Cir. 2025) (declining to imply a new *Bivens* remedy where federal prison officials failed to treat an inmate's diabetic ulcers); *Waltermeyer v. Hazlewood*, 136 F.4th 361, 368 (1st Cir. 2025) (declining to imply a new *Bivens* remedy for failure to treat chronic knee pain); *Rowland v. Matevousian*, 121 F.4th 1237, 1239-40 (10th Cir. 2024) (declining to imply a new *Bivens* remedy for denying an inmate's hernia surgery request); *Johnson v. Terry*, 119 F.4th 840, 862 (11th Cir. 2024) (declining to imply a new *Bivens* remedy for failure to treat a foot injury), *with Watkins v. Mohan*, 144 F.4th 926, 938 (7th Cir. 2025) (implying a new *Bivens* remedy where federal prison officials failed to treat severe side effects from a hernia surgery); *Kekai Watanabe v. Derr*, 115 F.4th 1034,

1043 (9th Cir. 2024) (implying a new *Bivens* remedy for failure to treat a fractured coccyx).

At the conclusion of its most recent term, however, the Supreme Court granted a writ of certiorari in *Kekai Watanabe*, *cert. granted sub nom. Nielsen v. Kekai Watanabe*, No. 25-417, 2026 U.S. LEXIS 2654 (U.S. Jun. 22, 2026) to resolve the circuits' divergent views on this question. The decision in *Nielsen* will most likely set the framework for adjudicating Doe's failure-to-treat claim.

Because of this development, and to preserve "economy of time and effort for [the Court], for counsel, and for [the] litigants," the most prudent course of action is to stay consideration of Doe's failure-to-treat claim until after the Supreme Court decides *Nielsen*. *FTC v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 626-27 (6th Cir. 2014) (quotation omitted); *see also Clinton v. Jones*, 520 U.S. 681, 706 (1997) ("[T]he District Court has broad discretion to stay proceedings as an incident to its power to control its own docket."); *Smith v. Garza*, No. 25-00353, 2026 U.S. Dist. LEXIS 169170, at *3-7 (N.D. Ohio Jul. 30, 2026) (staying consideration of inmate's Eighth Amendment *Bivens* claim until the Supreme Court decides *Nielsen*).

For the reasons discussed below, *see infra* Section IV.D, the stay will apply solely to the portions of the failure-to-treat claim asserted against Dr. McClain and Keathley. The BOP employees' recent motion seeking the same relief is denied as moot. (ECF No. 37).

*D. Supervisory Liability*

Staying a ruling on the failure-to-treat claim does not pose a barrier to evaluating whether BOP supervisory officials, like Rardin, Williams, and Dr. Aulepp, may be held personally liable for money damages under that same cause of action.[2] They may not.

For one thing, a failure-to-supervise theory grafted onto any one of the three substantive *Bivens* categories is not actionable. It poses both (1) a new *Bivens* context, and (2) the same "special factors" that scuttle Doe's failure-to-protect claim are likewise present here. *See Ziglar*, 582 U.S. at 140 (designating "the rank of the officers involved" as a meaningful distinction that would create a new *Bivens* context); *see also Brooks v. Richardson*, 131 F.4th 613, 616 (7th Cir. 2025) (declining to imply a supervisory liability claim in the *Bivens*/*Carlson* Eighth Amendment context); *Henry v. Essex County*, 113 F.4th 355, 362 (3d Cir. 2024) (declining to imply a supervisory liability claim in the *Bivens* Fourth Amendment context).

Even if such a theory could exist within the *Bivens* universe, it would not prove helpful to Doe's failure-to-treat claim against Rardin, Williams, and Dr. Aulepp. In a *Bivens* action, "[g]overnment officials may not be held liable for the

[2] The BOP employees effectively concede that Doe is not suing Dr. McClain or Keathley in any supervisory capacity. (ECF No. 27, PageID.237; *see also id.*, PageID.239 n.3). Their supervisory liability arguments are limited to Rardin, Williams, and Dr. Aulepp exclusively. (*Id.*, PageID.237).

unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). The "plaintiff must" instead "plead that each Government-official defendant, through the official's *own individual actions*, has violated the Constitution." *Id.* (emphasis added). Liability exists only where "the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it, or at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *Bevil v. Lappin*, No. 12-5520, 2013 U.S. App. LEXIS 26414, at *3 (6th Cir. 2013) (quotation omitted).

None of the complaint's allegations meet this threshold. Aside from identifying Rardin as FCI Milan's warden, the complaint fails to assert a single allegation against him individually. Nor does the complaint plausibly demonstrate, through non-conclusory allegations, whether Rardin or Williams (USMCFP's warden) were personally aware of Doe's incarceration at their respective facilities. And although the complaint is replete with accusations of Williams's "deliberate indifference as a supervisor for his conscious failure to address known systemic deficiencies in medical care delivery," this type of *systemic* malfeasance is insufficient to establish Williams's individual supervisory liability under *Bivens*. (ECF No. 1, PageID.15, ¶ 62). *See Bevil*, 2013 U.S. App. LEXIS 26414, at *3-4 ("The district court correctly concluded that, because none of the named defendants

were health-care professionals involved in Bevil's medical treatment, he failed [to] allege sufficient personal involvement to establish liability under *Bivens*.").

Doe's allegations against Dr. Aulepp suffer from these same defects. The complaint asserts that "FCI Milan medical staff delayed necessary diagnostic testing, specialist consultations, and appropriate neurological monitoring" and that Dr. Aulepp is responsible for these lapses "through her failure to establish, implement, or enforce adequate medical protocols for Mr. Doe's care." (ECF No. 1, PageID.12, ¶¶ 49, 51). These policy-practice-and-procedure allegations would perhaps be adequate to establish an *official* capacity claim against a municipal jail's clinical director under 42 U.S.C. § 1983. But they cannot support a claim for *individual* supervisory liability against similarly positioned BOP officials under *Bivens*. *See Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 370 (6th Cir. 2011) (stating that *Bivens* claims "may be asserted against federal officials only in their individual capacities."); *Marcilis v. Twp. of Redford*, 693 F.3d 589, 596 (6th Cir. 2012) (same); *see also Watkins*, 144 F.4th at 934 (sustaining a *Bivens* claim against a BOP clinical director where the inmate was "challenging the personal acts and omissions of Dr. Mohan, not merely seeking to hold him responsible for the conduct of the staff he supervises.").

So, in the end, regardless of how the Supreme Court decides *Nielsen*, Doe fails to state a plausible failure-to-treat claim against Rardin, Williams, and Dr. Aulepp since the cause of action is premised upon their supervisory roles.[3] [4]

*E. Amendment*

To thwart dismissal of the supervisory officials, Doe requests leave to amend the complaint after being afforded the opportunity to conduct "targeted discovery" into "the internal records and policies that remain in Defendants' exclusive control." (ECF No. 30, PageID.302).

Federal Rule of Civil Procedure 15(a)(2) provides that leave to amend a pleading should be freely given "when justice so requires." That means "the district court must be able to determine whether 'justice so requires,' and in order to do this, the court must have before it the substance of the proposed amendment." *Roskam Baking Co., Inc. v. Lanham Machinery Co., Inc.*, 288 F.3d 895, 906 (6th Cir. 2002) (citation omitted). "[A] bare request in an opposition to a motion to dismiss –

---

[3] Doe similarly relies upon supervisory liability to assert his failure-to-protect claim against Rardin (Count I). (ECF No. 1, PageID.22). Aside from the fact that the failure-to-protect claim is not cognizable under *Bivens* altogether, *see supra* Section IV.B, the portion of that claim asserted against Rardin fails for the additional reasons discussed above. *See supra* Section IV.D.

[4] In light of the Court's decision to (1) dismiss the failure-to-protect claim in its entirety, (2) stay its consideration of the failure-to-treat claim until the Supreme Court resolves *Nielsen*, and (3) dismiss the supervisory officials from the case, there is no need to address, at this time, whether the remaining individual defendants – Dr. McClain and Keathley – are entitled to qualified immunity.

without any indication of the particular grounds on which amendment is sought – does not constitute a motion within the contemplation of Rule 15(a)." *Beydoun v. Sessions*, 871 F.3d 459, 469 (6th Cir. 2017) (quotation omitted); *see also* Fed. R. Civ. P. 7(b)(1) ("A request for a court order must be made by motion.").

The request for leave to amend the complaint fits this description exactly. Doe asks for leave to amend in the event "the Court concludes that more detail is required as to any one defendant's personal involvement[.]" (ECF No. 30, PageID.302). But nowhere does he (1) propose the specific factual amendments that would support his supervisory liability theory, or (2) describe what materials he expects to obtain through discovery that would show the supervisory officials took a personal role in his medical care. And the proposed amended complaint – which Doe appends to his response to a separate dismissal motion – lacks the requisite allegations as well. (ECF No. 31-1).

Because Doe "submitted none of th[e] facts to aid the court in deciding whether justice require[s] the court to grant leave to amend," his request for such relief must be denied. *Roskam Baking*, 288 F.3d at 906. Accordingly,

IT IS ORDERED that the BOP employees' motion to dismiss the *Bivens* claims asserted against them in the complaint or, alternatively, for summary

judgment on those causes of action (ECF No. 27) is granted in part and consideration of another part is stayed.

IT IS FURTHER ORDERED that the failure-to-protect claim (Count I) is dismissed in its entirety.

IT IS FURTHER ORDERED that the portion of the failure-to-treat claim (Count II) asserted against Rardin, Williams, and Dr. Aulepp is dismissed.

IT IS FURTHER ORDERED that consideration of the portion of the failure-to-treat claim (Count II) asserted against Dr. McClain and Keathley is stayed pending the Supreme Court's decision in *Nielsen*.

IT IS FURTHER ORDERED that the Clerk of the Court is directed to terminate Rardin, Romero-Licata, Gregory, Dr. Aulepp, and Williams as party defendants to this litigation.

IT IS FURTHER ORDERED that the BOP employees' motion to stay the case (ECF No. 37) is denied as moot.

Dated: August 24, 2026

s/ Robert J. White
Robert J. White
United States District Judge